JOHN ROGERS AND FREDERICK E. SIEPER, PLAINTIFFS-APPELLANTS, v. DEPARTMENT OF CIVIL SERVICE AND BOARD OF COMMISSIONERS OF THE CITY OF PASSAIC, DEFENDANTS-RESPONDENTS.

Argued January 24, 1955—Decided February 28, 1955.

534

*Mr. Irving I. Rubin* argued the cause for the appellants.

*Mr. William N. Gurtman* argued the cause for the respondent Board of Commissioners of the City of Passaic.

The opinion of the court was delivered by

Jacobs, J.   The Appellate Division in *Rogers v. Dept. of Civil Service*, 31 *N. J. Super.* 543 (1954) dismissed the appeal which the plaintiffs had taken from an adverse determination by the Department of Civil Service.  We granted certification under *R. R.* 1:10–2.

The plaintiff John Rogers was employed in 1935 on the traffic maintenance squad in Passaic.  In 1947 he was appointed as foreman of the parking meter and traffic maintenance division of the department of public safety; his title was later changed to traffic maintenance foreman.  In 1940 the plaintiff Frederick E. Sieper was appointed as inspector of buses in the department of public safety; his title was later changed to transportation inspector.  On July 13, 1948 Passaic adopted an ordinance which created various positions in its municipal government, including those held by the plaintiffs.  On November 2, 1948 it adopted the provisions of the Civil Service Act and the plaintiffs continued in their positions without further appointment.  Rogers testified that he was a "working foreman" and that, in addition to his supervisory functions, he did all types of traffic maintenance work, including the installation and painting of traffic stanchions, the repair of parking meters, and the collection of coins from parking meters.  Sieper testified that, in conjunction with his transportation inspector duties, he performed miscellaneous work of the traffic maintenance division, including the installation of traffic signs, the repair of traffic

meters, and the making of parking meter collections. On March 17, 1950 Rogers and Sieper were laid off for reasons of economy and their positions were abolished when Passaic adopted an ordinance dated April 20, 1951 which listed the municipal positions but omitted those of traffic maintenance foreman and transportation inspector in the department of public safety.

Rogers and Sieper, both veterans and in the classified service, duly appealed to the Department of Civil Service which declined to order their reinstatement but directed that their names be continued "on the reemployment list for their respective positions." They then appealed to the Appellate Division which remanded the matter to the department for further consideration as to their demotional rights under *R. S.* 11:22–10.1 and *R. S.* 11:22–10.2. See *Sieper v. Dept. of Civil Service, Passaic,* 21 *N. J. Super.* 583 *(App. Div.* 1952). Thereafter the department made an adverse *ex parte* determination and they again appealed to the Appellate Division which remanded the matter for full hearing. On October 27, 1953 a hearing was held before the Civil Service Commission, stipulations were entered into, and evidence was taken. It appeared that when they were dismissed Rogers and Sieper were senior in grade and service to other persons in the department of public safety employed under the titles of traffic maintenance man, parking meter repairman, parking meter collector, automotive mechanic and administrative clerk. It further appeared that the number of employees and the budget of the parking meter and traffic maintenance division had increased since the plaintiffs were dismissed. Two new employees had recently been employed by the Division; one was appointed temporarily on July 7, 1953 as automotive mechanic; the other was appointed temporarily on July 7, 1953 and permanently on September 22, 1953 as parking meter collector. Notwithstanding the foregoing the Civil Service Commission ruled that there was "no job or position in a lesser category" to which either Rogers or Sieper could be demoted, as contemplated by *R. S.* 11:22–10.1 and

*R. S.* 11:22–10.2, and ordered that their names be continued on a special reemployment list for appointment to "the same or any comparable position as that from which they were separated as soon as the opportunity arises." They then appealed to the Appellate Division which held that the statutory demotional rights did not include the displacement of junior employees and sustained the commission's action. See *Rogers v. Dept. of Civil Service, supra,* 31 *N. J. Super.,* at 546.

Passaic advances the preliminary contention that the plaintiffs never held *de jure* positions and were therefore not within the protection of the Civil Service Act. See *Handlon v. Town of Belleville,* 4 *N. J.* 99 (1950) ; *Grunewald v. Township Com. of Weehawken Tp.,* 18 *N. J. Super.* 401 (*App. Div.* 1952), certif. denied 10 *N. J.* 145 (1952). On July 13, 1948 the city adopted an ordinance which created various municipal positions including bus inspector and foreman, parking meters and traffic maintenance division. Those positions were then occupied by the plaintiffs and they came within the protection of the Civil Service Act when it was later adopted. See *Shibla v. Township Com. of Wall Township,* 136 *N. J. L.* 506 (*Sup. Ct.* 1948), affirmed 137 *N. J. L.* 692 (*E. & A.* 1948). The *Handlon* case upon which the city relies is in nowise pertinent; there the position had not been created by ordinance prior to the adoption of the Civil Service Act and, indeed, had been deliberately omitted in the schedules referred to in the ordinance adopted shortly after the passage of the act. *Cf. Weaver v. Twp. of North Bergen,* 10 *N. J. Super.* 96, 102 (*App. Div.* 1950), reversed 6 *N. J.* 475 (1951).

The next contention advanced by the city is that *R. S.* 11:22–10.1 and *R. S.* 11:22–10.2 did not grant any mandatory demotional rights to the plaintiffs and that the commission's action did not violate the statutory terms or purpose. *R. S.* 11:22–9 had provided that when a civil service employee was separated for reasons of economy his name was to be placed on a special reemployment list; *R. S.* 11:22–10

had provided that when a civil service employee's position was abolished for reasons of economy he was "with the approval of the commission" to be demoted to some lesser position "in the same department in the regular order of demotion." See *R. S.* 11:15–7; *R. S.* 11:15–8. In *Walklet v. Civil Service Commission,* 114 *N. J. L.* 582, 585 (*Sup. Ct.* 1935), Justice Heher expressed the view that the demotional right thus conferred by *R. S.* 11:22–10 was "not a discretionary one"; in the course of his opinion for the former Supreme Court he said:

"And we see no force in defendants' claim, in the Lefkowitz case, that, where a position has been 'abolished for reasons of economy, or otherwise, and not because of delinquency' (the statutory language), the 'approval' of the civil service commission is necessary before 'any right of demotion accrued to' the prosecutrix, and that it rests within the sound discretion of the commission 'to grant or withhold said approval.' *L.* 1916, *c.* 122, *p.* 264. The highway commission did not invoke this statute. In fact, it sought the removal of prosecutrix in violation of its terms, and the statute is therefore not applicable. Moreover, the right thus conferred is not a discretionary one; the approval of the civil service commission was obviously designed to safeguard the rights of the holder of the abolished position and to insure observance of the Civil Service law."

In *Kraibuehler v. Civil Service Commission,* 134 *N. J. L.* 97, 100 (*Sup. Ct.* 1946), Justice Case discussed the overlapping provisions in *R. S.* 11:22–9 and *R. S.* 11:22–10. He pointed out that under *R. S.* 11:22–9 the separated employee had the right to have his name placed upon an eligible list for reinstatement but had no right to displace another employee; however, under *R. S.* 11:22–10 the employee whose position had been abolished had, with the approval of the commission, the right to be demoted to some lesser position in the same department. In *Schnipper v. Twp. of North Bergen,* 13 *N. J. Super.* 11, 17 (*App. Div.* 1951), a senior bookkeeper was separated for reasons of economy and sought unsuccessfully to replace a junior in service who held the position of assessing clerk. Justice Brennan (then a member of the Appellate Division) stated that the commission had

properly placed her on a reemployment list in accordance with *R. S.* 11:22–9 and that demotion to a lesser position was "a protection given by *R. S.* 11:22–10, not to persons laid off or separated, but to persons whose positions are abolished." In *Elwell v. North Bergen Twp.*, 13 *N. J. Super.* 330, 333 (*App. Div.* 1951) the court sustained the commission's action in affirming a foreman's separation for reasons of economy and in placing his name on a reemployment list. In the course of his opinion for the court Judge McGeehan held that while the foreman had been laid off for reasons of economy his position had not been abolished and that consequently he was merely entitled to have his name placed on the eligible list for reinstatement; he noted that "while demotional rights are given by *R. S.* 11:22–10 to persons whose positions are abolished, this protection has not been extended to persons such as petitioner who are laid off or separated under *R. S.* 11:22–9."

Much may be said for the policy implicit in *R. S.* 11:22–10 that where, for reasons of economy, it becomes necessary to abolish positions held by senior supervisory employees, they should generally be afforded the opportunity of displacing junior employees in their own department. *Cf. Viemeister v. Bd. of Education of Prospect Park*, 5 *N. J. Super.* 215, 218 (*App. Div.* 1949); *Pellett v. Dept. of Civil Service*, 10 *N. J. Super.* 52, 59 (*App. Div.* 1950), certif. denied 6 *N. J.* 314 (1951). And the reasons why the Legislature had dealt with layoffs for reasons of economy in separate and different fashion were somewhat obscure. See *R. S.* 11:22–9; *Schnipper v. Twp. of North Bergen, supra; Elwell v. North Bergen Twp., supra. Cf. Millett, Management in the Public Service*, 333 (1954):

"There are various standards upon which to base the selection of employees for separation because of curtailment of activities. Ideally, to be sure, administrators should utilize a necessary reduction in force as an occasion to separate the least-efficient workers, while retaining those whose past performance has been most satisfactory. Such procedure was recommended in 1949 by the Hoover Commission. Because it is so difficult to identify clearly those who should be re-

tained on the basis of efficiency, management sometimes falls back on the standard of seniority. In a career system there is good reason for this. In addition, in the Federal government, veterans must be given preference, especially if they have permanent status."

In any event, after the *Schnipper* and *Elwell* cases were decided, Assembly Bill No. 161 was introduced; it provided for the repeal of *R. S.* 11:22–9 and *R. S.* 11:22–10 and their replacement by a single provision designed to afford demotional rights to faithful employees who were separated or whose positions were abolished for reasons of economy. The statement attached to the bill set forth that it was designed to provide "a more just and equitable method" of treating laid off employees in the classified service. The bill was passed by the Assembly and Senate, was conditionally vetoed by the Governor who suggested changes designed to clarify and make it "more effective and workable," and was ultimately passed in altered form as *L.* 1952, *c.* 323. *R. S.* 11:22–10.1; *R. S.* 11:22–10.2. See *L.* 1952, *c.* 322; *R. S.* 11:15–9; *R. S.* 11:15–10. As enacted it provides that any municipal employee in the classified service who has been separated or whose office or position has been abolished for reasons of economy "shall, whenever possible, be demoted to some lesser office or position" in the same department "in the regular order of demotion and according to efficiency records and/or seniority." It provides further that "the chief examiner and secretary, with the approval of the president of the Civil Service Commission, shall determine the lesser office or position to which such employee may be demoted."

We are satisfied that the foregoing legislation represents a continuation and broadening of the policy originally expressed in *R. S.* 11:22–10; in other words, a classified employee who is either laid off or whose position is abolished for reasons of economy has demotional rights which may require the displacement of a junior employee in his department. *Cf. Walklet v. Civil Service Commission, supra; Kraibuehler v. Civil Service Commission, supra.* It is true that the statute stipulates that the employee shall be de-

moted "whenever possible"; but we take the qualifying clause to mean that although the controlling general principle is that the senior employee is to be afforded the opportunity of displacing a lesser employee in his department, there may still be instances in which the commission may properly determine that such displacement is not possible. Thus if there is no lesser position which the senior employee has the qualifications to fill, the commission may, within the statutory contemplation, determine that demotion is not possible; and seemingly it may reach a similar conclusion where it reasonably finds that placing the senior employee in a lesser position will in its practical consequence be disruptive or impair the department's efficiency or the public service. But we reject Passaic's contention that the refusal to place Rogers and Sieper in lesser positions was proper on the ground that whenever a supervisory employee is permitted to displace and occupy the position of a subordinate there is inevitably disruption which weakens staff morale and departmental efficiency; acceptance of that view would defeat the legislative objective and run counter to actual experiences in employment relations which disclose that supervisory employees have oftentimes displaced subordinates with credit to themselves and fulsome satisfaction to their employing units.

█ █ Passaic seeks comfort in the doctrine that action by the Civil Service Commission will generally not be upset on judicial review unless there is an affirmative showing that it was arbitrary, capricious or unreasonable. See *Falcey v. Civil Service Commission*, 16 N. J. 117, 123 (1954); *Carls v. Civil Service Commission*, 17 N. J. 215, 221 (1955). This doctrine is to be given sympathetic sweep where the commission has acted within the statutory delegation and has sought to further the legislative policies; it has little application where the commission has disregarded or failed to recognize those policies. The commission did not raise any question as to the seniority or efficiency records of Rogers and Sieper; nor did it find that they were not qualified to fill lesser positions or that their department would be disrupted

or its efficiency or service impaired by displacement of junior employees. It simply stated that it had carefully considered and complied with *L.* 1952, *c.* 323 (though believing it to be inapplicable) and had concluded "that there is no job or position in a lesser category to which they can be demoted." [31 *N. J. Super.* 543.] Upon the evidence presented in the record before us there was no reasonable basis for such conclusion. At the time of the layoffs in 1950 and the abolitions of the positions in 1951, there were several junior employees doing work within the general competence of Rogers and Sieper, and two additional traffic maintenance employees, one temporary and one permanent, were significantly employed as late as 1953 and are presumably still in the department's employ. Rogers and Sieper were entitled to demotional rights under *R. S.* 11:22–10 and when that statute was repealed they became entitled to the broad protection of *R. S.* 11:22–10.1 and *R. S.* 11:22–10.2. They have not received it and the commission is directed to take such steps as may be necessary to afford to them their demotional rights in accordance with the statutory mandate and the principles set forth in this opinion.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For affirmance*—Justice WACHENFELD—1.