37 N.J. Super. 98 (1955)
117 A.2d 22
ANDREW ARTASERSE, FRED BIEL, THOMAS DOBBINS, HERMAN DONCHIN, NICHOLAS GALLO, JOHN GUMBRECHT, GEORGE GUNTHER, FELIX ISOM, JOSEPH MULLER, JAMES O'BRIEN, JOHN SCHNABLE, OSCAR TREGER, JOHN WILSON AND EDWARD WOLFE, APPELLANTS,
v.
DEPARTMENT OF CIVIL SERVICE OF THE STATE OF NEW JERSEY AND LAWRENCE A. WHIPPLE, DIRECTOR OF THE DEPARTMENT OF LAW AND PUBLIC SAFETY OF THE CITY OF JERSEY CITY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1955.
Decided September 30, 1955.
*99 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Raymond Chasan argued the cause for appellants.
Mr. John F. Crane, Deputy Attorney-General, argued the cause for respondent Department of Civil Service (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
The present appeal has occasioned our review of certain proceedings which at the instance of the appellants were pursued in the Department of Civil Service.
The appellants are sergeants of police in the police department of the City of Jersey City. They sought to attain the requisite eligibility for promotion to the position of lieutenant and on November 6, 1953 submitted to a promotion examination conducted by the Department of Civil Service.
*100 Subsequently the appellants seem to have entertained the conviction that they had failed to pass the written test, for their counsel conferred on their behalf with the Chief Examiner, and the Secretary and the President of the Civil Service Commission on December 18, 1953. This conference, although of informal inception, actually inaugurated the liberal and deliberate consideration the commissioners and their representatives have devoted to the criticisms of the appellants.
The criticisms of the written examination were centered upon the nature and substance of certain questions of a legalistic tenor propounded to the candidates, and upon the accuracy of the adopted set of answers thereto utilized by the examiners in determining the test scores. This was the range of the appellants' remonstrance as manifested by the communication addressed by their counsel to the attention of the Secretary of the Civil Service Department on December 24, 1953. Its significance recommends its quotation ad literatim:
"Gentlemen:
This will serve to confirm the arrangements agreed upon following the conference between Dr. Clee and Mr. Russo for the Department and Maurice C. Brigadier and myself on behalf of a group of Jersey City Police Sergeants who took the recent Lieutenant's examination.
For the present purpose, we are addressing ourselves, exclusively, to the questions and answers on the examination which were legal in their context. In order to be able to give you a precise memorandum of the respects in which these questions and the answers ascribed to them are challenged, we shall prepare specific critiques in relation to each individual question, which you would then be in a position to submit to such authority as you desire to consult. For this purpose, I am setting down the particular questions involved, in order that you may be able to supply us with the precise wording of each particular question, enabling us to make a meaningful analysis.
They are:
Nos. 4, 7, 11, 13, 15, 20, 29, 44 and 48.
Needless to say, this will confirm that the questions which are supplied us will be kept in confidence and not disclosed to anyone so as to impair their utilization in future exams.
As I understand it, after you have an opportunity to discuss our critique with your own authority, there will be an opportunity for us to again confer in order to decide what proper course should *101 be taken to cure any inequities arising out of inaccuracies which will be found to have existed in the challenged questions and answers.
In the interim, we are agreed that the status quo will be preserved and that no list will be formulated or distributed.
Thank you very much for your courtesies and cooperation, and be assured of the willingness of myself and Mr. Brigadier to aid in every way possible in the resolution of these problems."
The reproduction here of the following letters is informative of the course and manner of the procedure agreeably pursued by the appellants and the Department to ascertain the merits of the protests and the justification, if any, for altering or otherwise correcting the credits given by the examiners to the respective appellants and other participants in the test.
From the Chief Examiner to counsel of the appellants on January 11, 1954:
"The Commission, at its meeting on January 5, gave approval to your request that you be sent questions No. 4, 7, 11, 13, 15, 20, 29, 44, and 48, for the recently conducted promotion examination for Lieutenant, Police Department, Jersey City.
In view of the Commission action, I am enclosing herewith a copy of the questions, which we understand will be kept in the strictest confidence and returned to this Department after serving your purpose.
We would appreciate your comments and critique on same and upon receipt thereof we shall further review these questions and advise you accordingly.
As further agreed, promulgation of this particular eligible list will be held in abeyance until this matter is cleared."
From counsel of appellants to the Department on March 22, 1954:
"Enclosed herewith you will find the memorandum of comment and critique respecting the legal questions on the above examination and the answers ascribed to them, which were the subject of challenge at the time that Mr. Maurice C. Brigadier and I conferred with you and Dr. Clee on December 18th last. You were, thereafter, good enough to supply to us, in conformity with the arrangements made at the conference, the precise text of the questions and answers, designating the one of the several multiple choices which the Department accepted as correct for the purpose of scoring.
The research and critiques on the nine questions involved were completed some time ago, but since I had drawn on the unique advices of Mr. Brigadier with his vast pedagogic experience in law *102 instruction, I did not want them to go forward in final form without the benefit of Mr. Brigadier's review. You will find the enclosed critique bearing his signature.
When you have had an opportunity to discuss our enclosed appraisal of the correctness of the multiple choice answers, I hold myself available for further conference to determine the proper course which should be taken to cure inequities arising out of inaccuracies which will be found to exist in the challenged questions and answers. Short notice will be adequate for this purpose.
I await your advices and, once again, thank you for your past courtesies and cooperation."
The record informs us that the pursuance of these endeavors including the "series" of conferences ultimately resulted in a determination of the Department to eliminate six of the questions, Nos. 7, 11, 13, 15, 20, and 29, of the nine impugned by the appellants from consideration, to rescore the papers of all of the candidates on that basis, and to promulgate a revised eligible list. Notwithstanding this renovated process of remarking the test papers, the appellants failed to attain the minimum requisite score, although the marks of two other candidates were thereby elevated for certification.
On July 29, 1954, the appellants having evidently learned of their expectant ineligibility, their counsel dispatched a letter to the Department, the pertinent portion of which is quoted as follows:
"This will serve to confirm my conference of yesterday with Honorable William F. Kelly, Jr., President, and your Mr. Druz, at which time you announced your intention to release the promotional list as heretofore promulgated by you. This conference was one of a series, going back to December of 1953, and relating to challenges to the examination, examination procedures, answers denominated as correct, marking procedures adopted by you, &c., as the result of which the group that I represent had been, unofficially, given to understand that they had failed the written test.
On behalf of my clients, this will, therefore, serve as a notice that an appeal is taken from the promotion examination for Lieutenant, Police Department, Jersey City, in respect to the several matters heretofore alluded to and in respect to such other matters as shall be made to appear on such appeal, and in order to review the acts of the Secretary and Chief Examiner and of the Department in the promulgation, conduct, grading and marking of the said examination."
*103 The somewhat unconventional inquiry initiated by the appellants and mutually pursued by them and the representatives of the Department over a span of months was terminated by the promulgation on August 12, 1954 of an eligible list containing 41 names.
The attitude of the Department toward a continuance of the review perhaps in a more formal manner "in respect to the several matters heretofore alluded to and in respect to such other matters as shall be made to appear" as desired by counsel of the appellants is expressed by the Department in its communication to counsel on September 29, 1954:
"On September 21, 1954, the Civil Service Commission considered the record concerning the above examination, which has been the subject of correspondence and conferences between you and this Department. The matter arose by reason of your letter, dated December 24, 1953, wherein you challenged certain questions and answers in the written portion of the examination.
Our records indicate that after you were supplied with the questions, you made objections to specific items and upon review thereof by John F. Crane, Deputy Attorney General assigned to this Department, six of the challenged questions were eliminated. This necessitated a rescoring of the papers of each candidate, which was accomplished.
Subsequent conferences were held between you, Abraham Miller, attorney for certain candidates; William F. Kelly, Jr., President of the Commission, and William Druz of this Department, at which the matter was reviewed and you were advised that the eligible list would be promulgated. The list, containing 41 names, was promulgated on August 12, 1954.
All of the above facts were presented to the Commission in its consideration of your letter of July 29, 1954, wherein you appealed on behalf of your clients for a review of the action of the Chief Examiner and Secretary and of the Department in the promulgation, conduct, grading, and marking of the said examination. It was the decision of the Commission that the review provided by Rule 38 has been made and any further review is unnecessary."
It is observed that the notice of appeal to our Division challenges in its purport the action of the Department in denying to the appellants a further opportunity to attack "the examination, examination procedures, answers denominated correct, marking procedures, etc. * * *" The two points assigned for judicial relief are (1) that the refusal *104 of the Department to accord the appellants a supplemental auxiliary opportunity to elaborate their objections has "utterly frustrated" the appellants' rights, and (2) prevented them from disclosing that the examination "was invalid in toto."
Our acquaintance with the information submitted to us for appellate consideration reveals quite obviously that all of the parties supposed the desired review of the civil service examination by the commissioners and their authorized representatives to be one within the contemplated object of Civil Service Rule 38, which affords an unsuccessful testee the privilege within a specified time of requesting in writing a review of his test scores in whole or in part upon stating "specific reasons therefor."
It is evident that many successive meetings were held at which counsel for the appellants advocated the criticisms and complaints of his clients. We do not ascribe to those so-called conferences, as suggested by counsel, the measurements of mere ex parte hearings. The substantial accomplishments achieved as a result of them refute that idea. It is not intimated that had the advocacy of counsel resulted in the deletion of all nine of the designated questions, the elimination would have elevated the quality of any of the appellants' papers to the requisite eligible grade.
It is not indicated in what material respect the permissible specification of objections to any phase of the examination was denied to appellants or abridged by the Department at any of the so-called conferences.
We are now asked either to nullify the examination and the eligible list announced by the Commissioners on August 12, 1954 or remand the inquiry to the Department for the hearing of "such other matters as shall be made to appear on such" review of "the acts of the Secretary and Chief Examiner and of the Department in the promulgation, conduct, grading and marking of the said examination." (Emphasis ours)
The "such other matters" are divulged to be the circumstance that the public notice of the examination was issued *105 September 17, 1953 but not received by the appellants until October 1, 1953; that the notice to the candidates forewarned them that the written test would be of the short answer and/or essay type and there were no essay questions (see Nigro, Public Administration (1951), at p. 249); that the passing grade was reduced upon the rescoring; that some questions were ambiguous; and that the test did not comprehend the appellants' service records, which last assertion appears to be contrary to the fact. The mere statement of those belated objections exhibits their frailness.
Broadly viewed, the present appeal invites us to remark that the judiciary is not disposed to engage in a critical supervisory examination of the composition of the questions to be propounded to candidates in promotional tests conducted by the Department of Civil Service, or to exercise an appellate review of the scoring of the answers and other like administrative functions delegated most liberally to the authorized examiners of the Department by the Legislature. The courts, however, will intervene to nullify such an examination where it is affirmatively shown to have been manifestly corrupt, arbitrary, capricious, or conspicuously unreasonable. Falcey v. Civil Service Commission, 16 N.J. 117, 123 (1954); Carls v. Civil Service Commission, 17 N.J. 215, 221 (1955); Rogers v. Dept. of Civil Service, 17 N.J. 533, 541 (1955).
We do not discern in the circumstances of the proceeding here under review anything to persuade us that the Department in any respect offended its extensive discretionary authority.
Affirmed.