WILLIAM P. HERBERT, APPELLANT, v. STATE OF NEW
JERSEY, CIVIL SERVICE COMMISSION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1978—Decided September 29, 1978.

Before Judges HALPERN, ARD and ANTELL.

*Mr. Charles P. Allen, Jr.,* argued the cause for appellant (*Messrs. Dietrich, Allen & St. John,* attorneys).

*Mr. Aron M. Schwartz,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney; *Mr. William F. Hyland,* former Attorney General of New Jersey, and *Ms. Erminie L. Conley,* Deputy Attorney General, of counsel).

PER CURIAM. This is an appeal from a final determination of the Civil Service Commission which reversed the recommendation of the hearing officer and dismissed Mr. Herbert's appeal.

The Department of Civil Service administered two examinations, one written and the other oral, for the position of Supervising Community Program Analyst in the Department of Community Affairs. Appellant passed the written examination and became one of 29 candidates eligible to take the oral examination for the position. The oral examination was administered by five examining teams, each team consisting of a Department examiner and an outside consultant. Although appellant was unable to take the examination on

the scheduled date, the Department allowed him to take a make-up examination which was administered by Leonard Miller and Larry Shanks, one of the original examining teams. Appellant received a failing grade on the oral examination and therefore became ineligible for the position. Thereafter he filed a notice of appeal with the Division of Hearings and Regulations in the Department. A hearing was granted at which two issues were raised:

(1) Whether there was, on the part of Mr. Leonard Miller, the consultant on applicant's oral examination, a conflict of interest of sufficient magnitude to require invalidation of the oral exam, and

(2) Whether the multi-team method of examining candidates in the oral test was contrary to the holding of *Rox v. Department of Civil Service*, 141 *N. J. Super.* 463 (App. Div. 1976).

The hearing officer found there was no conflict of interest on the part of Leonard Miller, but also concluded that *Rox, supra,* mandated a single examining team for all candidates and recommended that the oral examination be invalidated and a new exam be ordered.

The matter was then brought before the Civil Service Commission following the filing of exceptions and cross-exceptions to the report and recommendations of the hearing officer. The Commission found there was no conflict of interest, substantially adopting the hearing officer's findings on this issue, but rejected his conclusion that *Rox, supra,* mandates that all candidates for an oral examination be examined by the same team.

We agree with the determination of the Commission. Neither issue requires detailed comment. The allegation of a conflict of interest is three-pronged: (1) that Miller failed to sign the consultant certification prior to the examination, thus not disclosing that at the time of the examination he had a contract with the Department of Community Affairs' Division on Aging; (2) that Miller had an acquaintance with Thurman Harrison, who was ultimately appointed to the vacant position, and (3) that Miller was acquainted with

appellant's brother, Michael Herbert. The findings of fact of the hearing officer and the Commission indicate that Miller had performed professional consultation services on a limited basis for the Division on Aging, but the proofs failed to indicate how a conflict of interest resulted from this connection. It was further determined that Miller was only casually acquainted with Harrison and did not know that Harrison had taken the examination since Miller's team had not given Harrison his examination. Additionally, the hearing officer and the Commission found that the fact that Miller casually knew appellant and appellant's brother did not demonstrate any bias or prejudice. It was also determined that Miller's failure to sign the certification was an unintentional oversight which does not result in automatic disqualification of the examiner.

A determination by the Civil Service Commission will not be upset unless it is affirmatively shown that it is "arbitrary, capricious or unreasonable, or that it lack[s] fair support in the evidence * * *." *Campbell v. Civil Service Dept.*, 39 *N. J.* 556, 562 (1963); *Rivell v. Civil Service Comm'n*, 115 *N. J. Super.* 64, 72 (App. Div. 1971), certif. den. 59 *N. J.* 269 (1971). We are satisfied the decision below relating to the allegation of a conflict of interest was supported by substantial evidence in the record, and, upon the facts presented, the Commission's conclusion was not arbitrary, capricious or unreasonable.

The remaining argument that the multi-team method of examining candidates in the oral test is contrary to the holding of *Rox, supra,* is also without merit. The marking procedures in this case differ from those employed in *Rox.* In *Rox,* the oral examination was based on the subjective analysis of certain characteristics: "(1) interpersonal relations, (2) leadership qualities, (3) contribution of ideas, (4) judgment, and (5) effectiveness of presentation." 141 *N. J. Super.* at 466. All candidates were asked identical questions but were not given an individual grade or mark for each answer. One overall grade was given the candidate based

upon the testing team's consideration of the stated criteria in relation to all the answers given by the candidate. Because of the subjectivity invited by such a scoring system and the variance in the scores, we found "an overwhelming probability that team A applied the evaluative guidelines and graded the candidates on a more stringent basis than the other teams." Id. at 468. The basis of our ruling was a determination that all of the candidates in *Rox* did not receive fair and impartial treatment. It was not our intention to hold multi-team testing illegal but rather to suggest that under the circumstances of the case there was an "overwhelming probability" that one team applied standards different from those applied by other teams.

In this case the proofs do not suggest that the Commission fell short of its goal of fair and impartial treatment for all. The testing format is different from that applied in *Rox*. Each testing team was given suggested correct answers and four or five point values assigned to each answer according to an ascending scale of competence. Typically, the range in point values was defined in terms of "thorough understanding" and "detailed discussion" on one end of the scale, and "inability to discuss" and "simplistic analysis" on the other end. Each answer to each question was individually scored.

While it is true that the overall scores given by the Miller team were lower than those given by the other teams, that factor alone does not demonstrate that the teams applied different standards. The nature of the questions and the controlled method of analyzing the answers and assigning values to them established a degree of uniformity which could be applied by all of the examining teams.

In *Rox* we framed the issue as "whether the examination so held was so subjective as to have been noncompetitive and illegal." Id. at 467. We acknowledged our limited scope of review of Civil Service testing procedures; there will be no judicial intervention unless it is affirmatively shown that the process was "manifestly corrupt, arbitrary, capricious,

or conspicuously unreasonable." *Id.* at 467, quoting from *Artaserse v. Civil Service Dep't,* 37 *N. J. Super.* 98, 105 (App. Div. 1955). We further recognized that subjectivity alone is not fatal; indeed, it is a necessary component of tests assessing supervisory ability. 141 *N. J. Super.* at 467, citing *Kelly v. Civil Service Comm'n,* 37 *N. J.* 450, 460 (1962). We concluded by stating that oral tests are not inherently suspect; rather, they are expressly authorized by *N. J. S. A.* 11:9–3 and *N. J. A. C.* 4:1–8.9(a)(2). 141 *N. J. Super.* at 467.

To summarize, *Rox* did not hold that all multi-team oral examinations are noncompetitive and therefore illegal. Furthermore, our study of the entire record discloses sufficient credible evidence to support the findings and conclusions of the Commission "since the final score for each examination in the present case was calculated by Civil Service rather than by each examining team and that since each question was graded by awarding points based on a preformulated range of answers which were quantitatively based, the amount of subjective input by the examining teams was carefully controlled and the element of objectivity was sufficiently preserved." Appellant has failed to affirmatively demonstrate that the examination was patently arbitrary, capricious, corrupt or otherwise illegal. *Zicherman v. Civil Service Dep't,* 40 *N. J.* 347, 351 (1963); *Flanagan v. Civil Service Comm'n,* 29 *N. J.* 1, 12 (1959); *Artaserse v. Civil Service Dep't, supra,* 37 *N. J. Super.* at 105.

Affirmed.