**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5187-16T2

IN THE MATTER OF ERIC GRACE,
FIRE CAPTAIN (PM0457U),
MARGATE.

_____

Submitted May 21, 2019 – Decided July 5, 2019

Before Judges Rothstadt and Gilson.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2017-2823 and 2018-0259.

Levin Weinstock Levin, attorneys for appellant Eric Grace (Oded M. Weinstock, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Debra A. Allen, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Eric Grace appeals from a June 26, 2017 final administrative agency decision of the Civil Service Commission (Commission), which denied his appeal of certain scores he had received on an examination for the position

of second-level fire captain. In its decision, the Commission also reduced appellant's scores on two portions of the oral examination, resulting in him failing the test. Appellant also appeals from an April 2, 2018 decision denying his petition for reconsideration. Appellant contends that he was entitled to an evidentiary hearing in the Office of Administrative Law (OAL) and that the Commission's decision was arbitrary and capricious. We disagree and affirm.

I.

We discern the facts and procedural history from the administrative record. On May 19, 2016, appellant took an examination for the position of second-level fire captain. The examination consisted of two parts: a written multiple-choice test and an oral examination. The oral examination was divided into three exercises: (1) a fire scenario simulation measuring a candidate's ability to assess risk factors and implement strategies in fireground command (Evolving Scenario); (2) a simulation evaluating a candidate's ability to implement and administrate programs (Administration Scenario); and (3) a fire scenario simulation assessing a candidate's ability to recognize risk factors and implement strategies when a potentially hazardous material is involved (Arrival Scenario).

2

Candidates' responses to the three scenarios were scored based on their technical knowledge and oral communication abilities. The scoring was conducted on a five-point scale, with five as the optimal response, four as a more than acceptable passing response, three as a minimally acceptable passing response, two as a less than acceptable response, and one as a much less than acceptable response. To pass the oral examination, a candidate had to achieve a minimum average score of two-and-one-half on both technical knowledge and oral communication ability, and a technical knowledge score of three or higher on at least two of the exercises.

The same three panels scored each candidate who took the examination. Each panel consisted of two individuals: a fire service officer, who held or had held the title of second-level fire supervisor or higher, and an oral assessor, who was trained in scoring oral communication abilities. The panels rated a candidate's overall performance on each exercise, and assigned the candidate a score for technical knowledge and a score for oral communication ability. Thereafter, the Commission converted the raw scores into standardized scores.

Appellant received an overall examination score of 89.07 and ranked second on the eligibility list for the second-level fire captain position. On the oral examination, appellant earned the following raw scores: Evolving

Scenario: four for technical knowledge and one for oral communication ability; Administration Scenario: five for technical knowledge and four for oral communication ability; and Arrival Scenario: five for technical knowledge and three for oral communication ability.

Appellant filed an appeal with the Commission challenging his examination scores. Specifically, he challenged his technical knowledge score for the Evolving Scenario, and his oral communication ability scores for all three scenarios.

After reviewing appellant's test materials, including audio and video recordings of his oral presentations, the Commission issued a June 26, 2017 final administrative agency decision denying the appeal. On the Evolving Scenario, the Commission concluded appellant's scores of four for technical knowledge and one for oral communication ability were correct. On the oral communication ability scores for the Administration and Arrival Scenarios, the Commission determined appellant deserved lower scores than originally awarded and reduced his score on the Administration Scenario from four to three and his score on the Arrival Scenario from three to two. Consequently, appellant's average raw score fell below the required two-and-one-half and he was deemed to have failed the test.

4

In a letter dated July 24, 2017, appellant requested the Commission to reconsider its June 26, 2017 decision. Specifically, appellant requested that the Commission either reinstate his original scores and eligibility for the second-level fire captain position, or forward the matter to the OAL for a hearing.

On August 3, 2017, before the Commission acted on the request for reconsideration, appellant filed a notice of appeal with us. Thereafter, the parties agreed to a remand to allow the Commission to consider appellant's petition for reconsideration. Accordingly, we remanded the matter to the Commission for reconsideration of its June 26, 2017 decision, but we also retained jurisdiction.

On April 2, 2018, the Commission issued its new final administrative agency decision, which denied appellant's request for reconsideration. Appellant now appeals from both the June 26, 2017 and April 2, 2018 decisions of the Commission.

II.

Appellant raises two issues on this appeal. First, he argues the Commission should have transferred his matter to the OAL for a hearing. Second, he contends the Commission's scoring and re-scoring processes were

arbitrary and capricious. Neither the law nor facts support either of these arguments.

Our review of a final administrative agency decision is limited. Stein v. Dep't of Law & Pub. Safety, 458 N.J. Super. 91, 99 (App. Div. 2019) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). We will uphold an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). In evaluating whether a decision was arbitrary, capricious, or unreasonable, we examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

Moreover, a court is "obliged to give due deference to the view of those charged with the responsibility of implementing legislative programs." In re Reallocation of Prob. Officer, 441 N.J. Super. 434, 444 (App. Div. 2015)

6

(quoting In re N.J. Pinelands Comm'n Resolution PC4–00–89, 356 N.J. Super. 363, 372 (App. Div. 2003)).

A.  The Request for a Hearing in the OAL

Appeals of examinations administered by the Commission are generally decided on the written record, without a hearing.  See N.J.S.A. 11A:2-6(b); N.J.A.C. 4A:4-6.4(f); N.J.A.C. 4A:2-1.1(d).  Specifically, N.J.A.C. 4A:2-1.1(d) provides that "an appeal will be reviewed on a written record," "[e]xcept where a hearing is required by law, this chapter[,] N.J.A.C. 4A:8 [(which addresses the layoff of public employees)], or . . . [the] Commission finds that a material and controlling dispute of fact exists that can only be resolved by a hearing[.]" N.J.A.C. 4A:2-1.1 does not require a hearing when a candidate appeals his or her examination results.

Thus, the Commission had the authority to determine whether there exists a "material and controlling dispute of fact" that requires a hearing.  In re Wiggins, 242 N.J. Super. 342, 345 (App. Div. 1990) (quoting N.J.A.C. 4A:2-1.1(d)).  We review the Commission's decision to grant or deny a hearing under an abuse of discretion standard.  Ibid.  "The determination [of] whether [a material and controlling dispute of fact] exists is one committed to the discretion of the [Commission], and its decision will be affirmed unless it goes beyond the

range of sound judgment." Ibid. Courts are especially reluctant to interfere with the examination process, as it is a legislatively-delegated responsibility of the Commission. See N.J.S.A. 11A:4-1; Brady v. Dep't of Pers., 149 N.J. 244, 256-57 (1997).

Here, appellant argues that he was entitled to a hearing before the OAL because a factual dispute exists as to the methodology and criteria used in the scoring and re-scoring of his examination. In that regard, he contends that the "the record is completely devoid of any reference to the grading methodology or criteria of grading utilized by the [individuals] who originally scored [his] examination or those utilized by persons who re-graded the examination." He also maintains that the record is silent as to the identity and qualifications of the individuals who scored and re-scored his examination.

We discern no abuse of discretion in the Commission's decision to deny appellant a hearing in the OAL. Appellant has presented no evidence of a material fact in dispute. Instead, he claims a hearing is needed due to uncertainties and missing information in the record. Identifying where a record is incomplete does not establish a dispute over a material fact. See J.D. ex rel. D.D.H. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 525 (App. Div. 2000) (finding a petitioner's "bald allegations" and "naked

conclusions" insufficient to require an agency to transfer a matter to the OAL). Furthermore, appellant does not certify, or even assert, that he requested and was denied access to the information that he argues is missing from the record.

In addition, the substantial, credible evidence in the record undercuts appellant's assertions. In the "Candidate Feedback Report" dated October 26, 2016, which was provided to appellant after the initial scoring, the Commission provided a thorough explanation of its scoring process. In that regard, the report explains, "[e]ach candidate was scored by three different two person teams of assessors" and "[a]ll candidates from each different jurisdiction were scored by the same three teams of assessors." The report then details the type of individuals who comprised the teams of assessors. Namely, each team had one fire service officer who was or had previously been a second-level fire supervisor and one oral assessor trained in scoring oral communication ability.

The Commission further detailed its scoring methodology in its June 26, 2017 and April 2, 2018 decisions. Concerning the technical knowledge scores, the Commission explained that "[p]rior to the administration of the exam, a panel of Subject Matter Experts (SMEs) determined the scoring criteria, using generally approved fire command practices, fire fighting practices, and reference materials." The assessors then based their scoring on the "SME-

approved possible courses of action." Likewise, the oral communication ability scoring was based on the assessors' application of predefined "weaknesses."

Concerning the review process on appeal, the Commission explained that the reviewers watched and listened to recordings of the candidate's oral presentation "multiple times" to ensure that they understood the candidate's responses. The reviewers then re-scored the candidate using the same criteria as the initial assessors. The Commission further explained that the candidates were notified that their "scores may go up or down as a result of an appeal." Finally, regarding the scoring and re-scoring of appellant's examination, the Commission's June 26, 2017 decision recites at length the initial assessors' reasons for awarding the scores appellant was challenging and the reviewers' reasons for either affirming or reducing those scores.

In short, appellant has presented no evidence showing the Commission abused its discretion in denying his request for a hearing before the OAL.

B.     The Commission's Scoring and Re-Scoring Processes

"[C]ourts will defer to an agency's grading of a civil-service examination except in the most exceptional of circumstances that disclose a clear abuse of discretion." Brady, 149 N.J. at 258. To show a clear abuse of discretion, a candidate needs to demonstrate affirmatively "that the scoring method was

arbitrary." Id. at 257. We do not routinely review the contents of civil service examinations and answers to determine if the questions were answered well; instead, courts "conduct only a limited review of the reasonableness of a grading system and determine simply whether the testing and grading were clearly arbitrary." Id. at 258; accord In re Police Sergeant (PM3776V), 176 N.J. 49, 59-60 (2003). The burden is on the appellant when challenging the scoring of an examination. N.J.A.C. 4A:4-6.3(a)(1), (b).

In this case, appellant challenges his oral examination scores. Oral examinations are permissible testing techniques under the Civil Service Act, N.J.S.A. 11A:1-1 to 12-6. See N.J.S.A. 11A:4-1(a); N.J.A.C. 4A:4-2.2(a)(2). See also Herbert v. Civil Serv. Comm'n, 162 N.J. Super. 449, 454 (App. Div. 1978). Indeed, our Supreme Court has recognized that oral examinations "have great value when properly administered," however, they also "carry with them patent dangers of abuse and error." Kelly v. Civil Serv. Comm'n, 37 N.J. 450, 459 (1962). Accordingly, "the Commission must conscientiously take special care and precautions to insure the goal of selections based exclusively on merit and fitness[.]" Rox v. Dep't of Civil Serv., 141 N.J. Super. 463, 468 (App. Div. 1976) (quoting Kelly, 37 N.J. at 459). Courts will find an oral examination unreasonable if an appellant demonstrates an "overwhelming probability" that

the Commission failed to uniformly evaluate each candidate.  Herbert, 162 N.J. Super. at 453.

Oral examinations often rely on subjective components to assess a candidate's supervisory abilities.  Rox, 141 N.J. Super. at 467 (quoting Kelly, 37 N.J. 460).  The existence of such subjective elements is not fatal to the validity of the test.  Ibid. (quoting Kelly, 37 N.J. at 460).  Instead, the key for courts reviewing the scoring of an oral examination is whether "the Commission fell short of its goal of fair and impartial treatment for all."  Herbert, 162 N.J. Super. at 453.

Here, neither the initial scoring nor the re-scoring were arbitrary, capricious, or unreasonable.  As previously discussed, during the initial scoring process, every candidate was scored by the same three panels, who based their scoring determinations on pre-established criteria for both the technical knowledge and oral communication ability components.  Indeed, the circumstances underlying the instant appeal are comparable to those in Kelly, wherein the Court approved the Commission's use of the same two-person panel to administer a uniform oral examination to all candidates.  See 37 N.J. at 456, 460-61.

As to the Commission's re-scoring methods, appellant maintains they were arbitrary and capricious because only his examination was re-scored and it is unclear who conducted that re-scoring and what criteria was applied. Appellant further contends it was arbitrary and capricious for the Commission to reduce his scores to such a degree as to alter his eligibility status for the position.

As an initial matter, the Commission has the discretion to raise or reduce an examination score when reviewing a challenge to that score. See N.J.S.A. 11A:4-1; N.J.A.C. 4A:4-6.3; Artaserse v. Dep't of Civil Serv., 37 N.J. Super. 98, 105 (App. Div. 1955). Thus, appellant's argument that it was per se arbitrary and capricious to lower his score is meritless.

Next, appellant has not demonstrated an "overwhelming probability" that the reviewers applied a different standard than the initial assessors or that the re-scoring process was otherwise "manifestly corrupt, arbitrary, capricious, or conspicuously unreasonable." Herbert, 162 N.J. Super. at 453-54 (quoting Rox, 141 N.J. Super. at 467). The Commission explained that the reviewers used the same scoring criteria and point system as the initial assessors. See id. at 454 (affirming Commission's scoring of an oral examination by different examining teams where "[t]he nature of the questions and the controlled method of analyzing the answers and assigning values to them established a degree of

13

uniformity which could be applied by all of the examining teams"); DiGiovanna v. Dep't Civil Serv., 166 N.J. Super. 280, 283 (App. Div. 1979) (requiring appellant to show an "overwhelming probability" that certain examiners "applied the evaluative guidelines and graded the candidates on a more stringent basis" than other examiners).

Moreover, appellant's speculation concerning who conducted the review and re-scoring is insufficient to satisfy his burden of proof. See N.J.A.C. 4A:4-6.3(b); Brady, 149 N.J. at 257-58; Artaserse, 37 N.J. Super. at 105. There is no requirement that the reviewers be the same individuals who conducted the initial assessment. As there is no evidence demonstrating the reviewers were unqualified to score the examination, their unknown identity does not undercut the validity of the re-scoring.

Finally, that only appellant's examination was re-scored does not create an overwhelming probability that he was subjected to a more stringent grading process. Indeed, the record reveals only one difference between the re-scoring process and the initial scoring process. Namely, the reviewers reached their scoring decisions after repeatedly listening to and watching the recording of appellant's oral presentations. During the initial scoring, the assessors scored the candidates immediately after the in-person presentations; thus, the initial

assessors could not replay the presentations before scoring the candidate. That difference alone, however, does not demonstrate that the appellate reviewers applied different standards or more stringently reviewed the examination. Rather, the record supports a finding that the reviewers applied the same scoring criteria and point system as the initial assessors.

Accordingly, appellant has failed to affirmatively demonstrate that the scoring or re-scoring of his oral examination "was patently arbitrary, capricious, corrupt or otherwise illegal." Herbert, 162 N.J. Super. at 454 (first citing Zicherman v. Dep't Civil Serv., 40 N.J. 347, 351 (1963); then citing Flanagan v. Dep't of Civil Serv., 29 N.J. 1, 12 (1959); and then citing Artaserse, 37 N.J. Super. at 105).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5187-16T2