141 N.J. Super. 463 (1976)
358 A.2d 819
LIEUTENANTS JOSEPH R. ROX, DONALD BLYDENBURGH, RICHARD S. TENPENNY, JOHN E. CURTISS, MALCOLM E. MC ELROY, ROCCO J. LORENZO, EDWARD J. LITTLE, LEO O. BERNHEIM, WILLIAM J. LISSENDEN, EDWARD J. GARRIGAL, FRANK H. MACHIAVERNA AND WILLIAM G. DONNELLY, APPELLANTS,
v.
DEPARTMENT OF CIVIL SERVICE AND WILLIAM DRUZ, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 29, 1976.
Decided May 13, 1976.
*465 Before Judges ALLCORN, KOLE and ARD.
Messrs. Zazzali & Zazzali, attorneys for the appellants (Messrs. Lawrence A. Whipple, Jr., and Donald B. Ross, Jr. on the brief).
Mr. William F. Hyland, Attorney General, attorney for the respondents (Mr. Stephen Skillman, Assistant Attorney General, of counsel; Ms. Erminie L. Conley, Deputy Attorney General, on the brief).
PER CURIAM.
Appellants (12 lieutenants employed by the Newark Police Department) appeal from a determination of the State Civil Service Commission (Commission) which affirmed the results of the oral portion of a promotional examination conducted by the Department of Civil Service for the position of police captain in the City of Newark, New Jersey. Appellants first appealed to the Division of Examinations pursuant to N.J.A.C. 4:1-8.15. The appeal challenged the "validity, substance, conduct and results" of the oral examination held on August 14, 1974. The appeal was subsequently dismissed and a further appeal was made to the Hearings and Regulation Section of the Department of Civil Service which was also dismissed.
An understanding of the factual background of this appeal is essential. The written promotional examination for police captain for the City of Newark and several nearby municipalities was announced by the Commission on February 28, 1974. It was administered on May 18, 1974 and results were published on or about July 31, 1974. It was then announced that an oral examination would also be administered. The oral examination appears to represent a departure in policy and, although the record is not clear, apparently had not been *466 utilized for a number of years. Sixteen of the 29 individuals employed as captains in the Newark Police Department as of August 1, 1974 had not been tested orally during their promotional examinations. It is a fact that after the oral examination which is the subject of this litigation the Commission announced that oral examinations will no longer be administered for the title of police captain.
On August 14, 1974 the oral examinations were administered to 61 Newark police lieutenants. The identical oral examination had been administered to candidates from other neighboring municipalities on prior dates. No attempt was made by the Commission to keep the questions secret. Unquestionably candidates in Newark were in a position to be privy to the questions prior to their examination.
In Newark the 61 candidates were divided among seven boards of examiners (each hereinafter referred to as the "team"). Each team consisted of two interviewers, a Civil Service employee and a police consultant; their function was to interview and grade each applicant assigned to their team. Presumably each team tested eight or nine of the 61 candidates. In an attempt to standardize administration of the examination the teams were briefed and given formal instructions with respect to the questions to be asked, expected answers and standards to be applied in determining the applicant's score. All candidates were asked identical questions; however, each answer was not given an individual grade or mark. The formal instructions stated the candidates were to receive one overall grade, to be based on a subjective analysis of the following characteristics: (1) interpersonal relations, (2) leadership qualities, (3) contribution of ideas, (4) judgment and (5) effectiveness of presentation.
The results of the oral tests reveal substantial inconsistencies. There were three failures. Two of the failures were tested by the same team (hereinafter team A). Appellant Tenpenny, one of the candidates failed by team A, had the highest score in the written examination. Excluding the *467 two failures, the average score given by team A was 75. The average score given by the remaining six teams, excluding the third failure, was 81.6. Seventeen candidates achieved scores of 75 or less. Five of these were tested by team A. Twenty-seven individuals attained scores of 81 or more; none of these were tested by team A.
The primary question before us is whether the examination as held was so subjective as to have been noncompetitive and illegal. We recognize our duty to approach questions of this nature with suitable restraint. As stated in Artaserse v. Dept. of Civil Service, 37 N.J. Super. 98 (App. Div. 1955):
* * * the judiciary is not disposed to engage in a critical supervisory examination of the composition of the questions to be propounded to candidates in promotional tests conducted by the Department of Civil Service, or to exercise an appellate review of the scoring of the answers and other like administrative functions delegated most liberally to the authorized examiners of the Department by the Legislature. The courts, however, will intervene to nullify such an examination where it is affirmatively shown to have been manifestly corrupt, arbitrary, capricious, or conspicuously unreasonable. * * * [at 105]
Our Legislature, in N.J.S.A. 11:9-3, has expressly approved oral examinations as an appropriate testing technique, and pursuant thereto the Civil Service rules [N.J.A.C. 4:1-8.9(a) (2)] provide that competitive examinations may consist of oral tests. The Supreme Court has acknowledged that "subjective elements would appear to be inherent in all oral examinations seeking supervisory and personality traits, and their presence may not be reasonably viewed as fatal," and has upheld the validity and recognized the value of oral examinations, where properly administered. Kelly v. Civil Service Comm'n, 37 N.J. 450, 460 (1962).
The requirement that each team evaluate the answer to each question, consider the answer in relation to the five characteristics, and then translate all the answers into one overall grade obviously mandates a strongly subjective analysis. *468 However, when the testing function and candidates are divided among seven teams, the otherwise allowable subjectivity inherent in a test of this nature loses its uniformity. The scores of the seven candidates appearing before team A, summarized above, when compared to the scores achieved by the other 54 candidates, indicate an overwhelming probability that team A applied the evaluative guidelines and graded the candidates on a more stringent basis than the other teams. The difference in the scores indicates that the same standard was not used in testing every candidate. This is violative of the spirit and purpose of the Civil Service rules. N.J.A.C. 4:1-1.2 provides:
These rules are prescribed for the purpose of implementing the statutory provisions to assure the continuance of the merit system and to provide a modern personnel system, thereby promoting efficiency in the conduct of public business and assuring fair and impartial treatment for all applicants for employment and all employees in the classified service. [Emphasis supplied]
In Kelly v. Civil Service Comm'n, supra, the court approved a single two-man panel administering the test to all candidates. The oral examinations were similar in scope and substance to those given in the instant case. The court upheld the use of oral examinations but noted that
Although they have great value when properly administered, oral examinations carry with them patent dangers of abuse and error. * * * In the light of the dangers, the Commission must conscientiously take special care and precautions to insure the goal of selections based exclusively on merit and fitness, * * * [at 459]
We feel the essential competitive requirement of our Civil Service statutes, N.J.S.A. 11:9-1 et seq., was impaired by this multi-team approach. The candidates were competing fairly with only those in their own particular group rather than with all candidates. The procedures followed in this case embraced patent dangers of abuse which the Supreme Court in Kelly dictated should be avoided by the Commission *469 in the proper discharge of its functions. Indeed, the subsequent abandoning of the oral examination technique in examinations for police captain would appear to be a tacit admission of these dangers by the Commission. As a result, the goal of fair and impartial treatment for all was not achieved. We find this oral testing format to be unreasonable, and the results of the oral examination are invalidated.
Appellants also assert that it was unreasonable for the Commission to fail to adopt adequate and meaningful precautionary measures to assure the security of the examination. In light of our determination concerning the oral testing format, we need not rule on this issue; however, we deem it to be of sufficient importance to warrant an expression of our views.
N.J.A.C. 4:1-8.19 provides in pertinent part:
(a) Every examination shall be so conducted as to assure all applicants an equal opportunity to demonstrate their qualifications and abilities. The Chief Examiner and Secretary shall institute procedures and take precautionary measures or other necessary action to prevent:
1. Unauthorized persons from securing in advance questions or other material to be used in a test, unless the same are available for all applicants; * * * [Emphasis supplied]
Appellants contend that this rule was violated in that the identical oral examination given to the Newark lieutenants on August 14, 1974 had been previously administered to candidates in other cities in the area, thus creating the strong likelihood that some of the Newark candidates, through communication with candidates in other testing municipalities, had knowledge of the questions. The Commission argues that security was maintained by not permitting the candidates to know the results of their oral examination or to review their performance until all the examinations were concluded.
It is evident that no serious attempt to satisfy N.J.A.C. 4:1-8.19 was made. The delay of the review of the oral examination is not a sufficient precaution to preclude some Newark candidates from having prior access to the questions *470 to be asked at the examination. Although the advantage would be greater if the correct answers were also known, a distinct advantage inures to the individual having knowledge of the questions before being orally examined. While appellants have not documented any specific instances in which the test questions were actually obtained, the regulation requires measures to be taken to prevent that possibility. No such reasonable measures were taken in this case, and as a result the integrity of this oral examination becomes suspect. If oral examinations are to be restored, we suggest consideration be given to a schedule designed to eliminate such a possibility.
Reversed.