**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2092-22

IN THE MATTER OF
GLENN GASTON, SR.,
POLICE CAPTAIN
(PM4059C), UNION CITY.

_____

Submitted October 21, 2024 – Decided March 12, 2025

Before Judges Gummer and Jacobs.

On appeal from the New Jersey Civil Service Commission, Docket No. 2022-3164.

Caruso Smith Picini, PC, attorneys for appellant Glenn Gaston, Sr. (Timothy R. Smith, of counsel; Zinovia H. Stone, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Civil Service Commission (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Adam Marshall, Deputy Attorney General, on the brief).

PER CURIAM

Glenn G. Gaston, Sr. appeals from the Civil Service Commission's final administrative determination of February 1, 2023, denying his petition for

reconsideration of an August 3, 2022 decision in which the Commission denied his appeal of the score he had received on the essay portion of the Union City Police Department (UCPD) Captain's test. Gaston claims his due-process rights were violated because he was not given relevant materials that the Commission had relied on in reviewing his appeal. Beyond this, Gaston claims the agency's final determination was against the weight of the evidence and was arbitrary, capricious, or contrary to law. As remedy, Gaston requests this court to "grant[]" his appeal. In the alternative, he requests we remand the matter to the Commission to conduct a new review of his appeal. For reasons that follow, we affirm the Commission's final determination, denying Gaston's appeal in its entirety.

## I.

Gaston is a lieutenant with the UCPD. He claims that during his time in law enforcement, he received first-responder training on the deployment of Naloxone, more commonly known as Narcan, an agent that rapidly reverses opioid overdose. In October 2021, Gaston sat for the Commission-administered examination for "Police Captain." The test consisted of multiple-choice and essay portions. "Senior command personnel from police departments, called Subject Matter Experts (SMEs)" scored the tests and helped determine

acceptable responses to the scenarios presented. Gaston received a final score of four-out-of-five for the "technical supervision/problem solving/decision making [essay] component."

After receiving his scores in June 2022, Gaston asked to review his answers. Toward this end, Gaston signed a form titled, "Rules for Review," which set forth the examination review rules. Specifically, the Rules for Review stated that the examinee would be allotted thirty minutes to review the exam. During the thirty minutes allotted, he was able to review the copies of the pages from the exam booklet, the exam scoring sheet, and the final score calculation report.

Within days of completing review, Gaston filed an appeal with the Commission, requesting his score for the essay portion be changed from a four-out-of-five to a five-out-of-five. Specifically, he disputed his score for a question concerning a scenario where the responder receives a call reporting a young man having a drug overdose. In pertinent part, the question reads:

> You are at the stationhouse when 9-1-1 dispatch receives a call from Emily Jones stating that her 20-year-old boyfriend, Ben Nelson, is at her house and is experiencing an overdose. Emily states that the two of them and another friend, Ashley Smith, had been snorting heroin, which they bought earlier that day, when Ben started experiencing tremors and began vomiting several times.

A-2092-22

The question asks the examinee to indicate what actions to take when arriving on the scene in such a scenario. Gaston's response included a number of steps he contended were consistent with what he had learned during first-responder training. However, his response did not include administration of Narcan to the victim.

On appeal, Gaston described his proposed actions as "consistent with NJ Division of Mental Health and [A]ddiction [S]ervices overdose responder training" and that his answer would encompass the administration of Narcan if the hospital found it necessary upon assessment. Gaston contended the administration of Narcan was not necessary and requested his score be changed. For this question, SMEs determined that "administering NARCAN to [the victim] was an important action to take" and that "[t]here was enough information in the scenario to require candidates to treat [the victim] as though he was overdosing . . . ."

In August 2022, the Commission issued a Final Administrative Action, taking notice of the SMEs' determination that a complete response would necessarily include administration of Narcan to the victim, observing that the information provided warranted treatment of the victim as though he was overdosing. The Commission noted that "[t]remors and vomiting are signs of

an overdose," and the caller specifically stated the victim was overdosing. "Viewed holistically," Gaston's response warranted his score of four-of-five in that he "missed further actions to enhance his score" to a five-of-five.

Gaston moved for reconsideration of the Commission's denial, requesting "the provision to him of those materials submitted by the Department and a fair opportunity to respond and be heard with regard to his [a]ppeal." He again referred to first-responder training resource materials published by the New Jersey Division of Mental Health and Addiction Services to support his assessment that the victim depicted in the scenario on his exam was experiencing an opioid high and not an overdose. Gaston argued he was never provided with the documents the Department had submitted to the Commission and on which the Commission had relied in its decision.

On February 1, 2023, the Commission issued its Final Administrative Action in the matter, denying Gaston's petition for reconsideration. The Commission found the scoring of Gaston's exam was appropriate, addressing his claim that administration of Narcan was unnecessary by stating:

> [t]he scenario did not state that a party has said Ben was potentially overdosing, rather, Emily said Ben was overdosing. She didn't say "potentially" or say she was unsure. Also, vomiting is a sign of overdose, and the appellant has not produced evidence that one should not administer NARCAN if tremors are present. Given the

5

scenario, Ben was overdosing, and the SMEs'
determined that NARCAN should have been
administered.

[(Emphasis in original).]

The decision explained that Gaston had received some credit for providing aid while awaiting EMS arrival, but he could not receive complete credit for the response because of his failure to include the administration of Narcan in his answer.

In denying reconsideration, the Commission relied on N.J.A.C. 4A:2-1.6(b), which provides that a petition for reconsideration must show new evidence that would change the original outcome or that a clear material error had occurred. The Commission found Gaston had failed to meet that standard. In reaching this conclusion, the Commission relied on the Supreme Court's decision in Brady v. Department of Personnel, 149 N.J. 244 (1997), to support its claim that the policies and rules of the Commission "represent a reasonable balance between security and test taker interests." In Brady, the plaintiff officer took a civil-service examination seeking a promotion. Id. at 249. When unsuccessful in the examination, the plaintiff challenged the results and sought complete access to the hearing materials, including the exam questions and the standards used to grade his answers. Ibid. Because the gravamen of the

plaintiff's complaint was that he had not received a fair score, the Supreme Court ruled he was entitled to obtain only such evidence that reasonably may have enabled him to assess the correctness of his answers and to demonstrate that the agency's grading of his examination constituted an abuse of discretion. Id. at 260. In that manner, the Court accommodated the competing goals of examination security and examinee access in a manner that was neither arbitrary, capricious, nor unreasonable.

The Commission thus determined Gaston had failed to show clear material error or new evidence that would change the outcome to support his petition for reconsideration.

II.

Gaston appealed the February 1, 2023 decision. Under our limited scope of review, we conclude the Commission's decision to deny Gaston's request for reconsideration was not arbitrary, capricious, or unreasonable. See Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

Generally, an appellate court disturbs an agency's adjudicatory decision only if it is determined its "decision is 'arbitrary, capricious or unreasonable' or

is unsupported 'by substantial credible evidence in the record as a whole.'" M.R. v. N.J. Dep't of Corr., 478 N.J. Super. 377, 386 (App. Div. 2024) (quoting Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022)). The challenger bears the burden of proving an agency action as arbitrary, capricious, or unreasonable. Ibid. (quoting Parsells v. Bd. of Educ. of Borough of Somerville, 472 N.J. Super. 369, 376 (App. Div. 2022)). "Thus, 'an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that: (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence.'" In re Young, 471 N.J. Super. 169, 177 (App. Div. 2022) (quoting In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008)). "When an agency's decision meets those criteria, then a court owes substantial deference to the agency's expertise and superior knowledge of a particular field." Ibid. (citation omitted).

An appellate court on review is not bound to the agency's interpretation of a statute or a determination of a purely legal issue. Ibid. (quoting Allstars, 234 N.J. at 158). "We will overturn an agency's interpretation of a statute it implements only when it is 'plainly unreasonable.'" In re Comm'r's Failure to

Adopt 861 CPT Codes, 358 N.J. Super. 135, 149 (App. Div. 2003) (quoting Merin v. Maglaki, 126 N.J. 430, 437 (1992)). Therefore, substantial deference is afforded to the interpretation of the agency designated to enforce the act. Ibid.

In seeking reversal, Gaston argues the Commission impermissibly denied him access to the additional materials provided to the Commission by the UCPD on which the Commission had relied in its denial of his appeal. This deprivation purportedly prevented him from effectively responding on appeal and violated his due-process rights. Gaston further argues that the Commission's finding of missed further action (administration of Narcan) was arbitrary, capricious, or not supported by substantial, credible evidence.

In response, the Commission argues it has the authority to administer and develop examinations in a manner that balances examinee access and security. It further argues that Gaston was provided the opportunity to review the documents and that "its decision to limit access to exam material was neither arbitrary[,] nor capricious[,] nor unreasonable[,] and should be upheld." In response to Gaston's second argument that the grading of his exam was arbitrary, capricious, or not supported by evidence, the Commission argues the grading of Gaston's essay was entirely appropriate and does not warrant judicial scrutiny.

The New Jersey Legislature has declared that it is the policy of the State to select or promote employees based on their "relative knowledge, skills, and abilities." N.J.S.A. 11A:1-2(a). The Commission has the authority to announce, rate, and secure examinations while the applicant has the right to appeal "adverse actions relating to the examination and appointment process." N.J.S.A. 11A:4-1(a), (e). Indeed, N.J.S.A. 11A:4-1 provides the Commission with "the authority to devise a fair, secure, merit-based testing process by which candidates are selected for employment and promotion." In re Police Sergeant (PM3776V) City of Paterson, 176 N.J. 49, 57 (2003) (quoting Brady, 149 N.J. at 254).

The regulations further outline the procedure followed by the Commission to carry out this stated policy. N.J.A.C. 4A:2-1.1, which governs filing appeals to the Commission, reads:

> (a) All appeals to the Civil Service Commission shall be in writing, signed by the person appealing (appellant) or his or her representative and include the reason for the appeal and the specific relief requested.
>
> (b) Unless a different time period is stated, an appeal must be filed within 20 days after either the appellant has notice or should reasonably have known of the decision, situation, or action being appealed.
>
> (c) The appellant must provide any additional information that is requested, and failure to provide such information may result in dismissal of the appeal.

(d) Except where a hearing is required by law, this chapter or N.J.A.C. 4A:8, or where the Civil Service Commission finds that a material and controlling dispute of fact exists that can only be resolved by a hearing, an appeal will be reviewed on a written record. In written record appeals:

> 1. Each party must serve copies of all materials submitted on all other parties; and

> 2. A party may either review the file at the Civil Service Commission during business hours, or request copies of file materials.

(e) A party in an appeal may be represented by an attorney, authorized union representative, or authorized appointing authority representative.

Further, N.J.A.C. 4A:4-6.4 dictates review of examination items, scoring, and administration and highlights the manner in which the examination process can be restricted:

> (d) Candidates shall not be permitted to copy any of the questions and answers, but shall be allowed to make such limited notes as the Chairperson or designee permits.

> (e) In order to maintain the security of the examination process, the Chairperson or designee may, on a particular examination, modify or eliminate the review of examination questions and answers. Candidates shall be notified of any such restrictions at the time that the examination is administered.

(f) The Civil Service Commission shall decide any appeal on the written record or such other proceeding as the Commission deems appropriate.

[N.J.A.C. 4A:4-6.6. (d) to (f).]

A.

Gaston's claim that the Commission arbitrarily, capriciously, or unreasonably prevented him from having access to more of the materials used to evaluate his examination must be evaluated in the context of these statutes and codes. "Courts can only intervene in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy." Brady, 149 N.J. at 256; (quoting In re Musick, 143 N.J. 206, 216 (1996)). In so holding, the Court has recognized the limited role of the judiciary and the broad regulatory authority of the Commission. Ibid. Notably, examinations are an administrative function that should be left to the UCPD and the Commission, and

> [t]he fulfillment of that function is a matter requiring special expertise, involving as it does the determination of what job knowledge, skills and abilities are necessary or desirable in a candidate for a particular position . . . . In view of the above, the courts cannot intervene to nullify a civil service examination unless it is clearly shown that the Department has abused its discretion.

[Id. at 257 (quoting Zicherman v. Dep't of Civ. Serv., 40 N.J. 347, 350-51 (1963)).]

The general rule is that "courts will defer to an agency's grading of a civil-service examination except in the most exceptional of circumstances that disclose a clear abuse of discretion." Id. at 258. This courts review is limited to the "reasonableness of a grading system" and "whether the testing and grading were clearly arbitrary." Ibid.

Specifically, when a challenge is made to the process by which an examinee was able to conduct his appeal, a "plaintiff is entitled to obtain only such evidence that reasonably may enable an examinee to assess the correctness of his or her answers and to demonstrate that the . . . grading of his or her examination constituted an abuse of discretion." Id. at 257. If the court finds the appellant had "sufficient access to the relevant materials and a reasonable opportunity to evaluate the grading process," then there can be no abuse of discretion. Id. at 260. The Commission's balance of ensuring security and integrity with granting an examinee access will be upheld unless the court finds the accommodation to be arbitrary, capricious, or unreasonable. Ibid.

A process that denies an examinee

> all access to testing materials . . . almost surely would be arbitrary, capricious, or unreasonable because it would allow [the Commission] to conduct the testing

and grading process without any accountability and would foreclose any opportunity on the part of an examinee to demonstrate the unreasonableness or unfairness of his or her examination.

[Id. at 262.]

An examinee may also make a prima facie showing of arbitrariness or discrimination that would justify more extensive disclosure of materials by the Commission. Ibid. To make such a showing, an examinee would have to show more than just an erroneous score and would have to point to a specific example of arbitrariness or discrimination. Id. at 263. The court will then intervene when the process is shown to have been so inherently "corrupt, arbitrary, capricious, or clearly unreasonable." Ibid. (quoting Artaserse v. Dep't of Civ. Serv., 37 N.J. Super 98, 105 (App. Div. 1955)).

Here, Gaston argues he was deprived the opportunity to have his appeal heard in a meaningful manner due to the Commission's failure to provide him with the materials the UCPD relied on for grading examinations. Specifically, Gaston claims he was never provided with a copy of the exam booklet, answers, rules used in assessing his answers, or the formal score report. Gaston claims this lack of disclosure denied him the opportunity to appropriately respond to the allegations that his score markdown was justified, thereby violating his due-process rights. The Commission responds by noting that Gaston was provided

14

with the Rules for Review, which described the specific documents he was able to examine, including the scoring sheet, the final score calculation report, and the essay from the original exam booklet. Although Gaston was not allowed to keep these items or provided with copies, he was able to review them during the time allotted. The Commission argues that "[t]hese procedures were fully compliant with Gaston's right to a limited review of exam information and consistent with the Commission's need to maintain exam security."

B.

We discern no abuse of discretion in the Commission's position. The review process here was not arbitrary, capricious, or unreasonable and does not warrant intervention by this court. Here, the Commission provided Gaston with the Rules for Review, the original exam booklet, the exam scoring sheet, the final score calculation, and thirty minutes to review this information. Though Gaston was not provided with a copy of this material, he was given the opportunity to review it. Gaston's request for increased disclosure raises the legitimate concern that doing so "would wreak havoc with the [the Commission's] legitimate efforts to maintain security." Brady 149 N.J. at 261.

In Brady, the court held the review procedure implemented by the agency was appropriate where it included: (1) giving the examinee forty-five minutes

to review a summary of the questions; (2) providing an explanation of the course of actions missed; (3) providing the examinee with an explanation of the scoring process; and (4) giving the examinee access to the scoring guide used in grading the exam. Id. at 260. The procedure here was similar to the procedure implemented in Brady and was therefore also appropriate. The limited access to examination information granted to Gaston here was further within the scope of the Commission's regulatory authority. The procedure followed by the Commission was not arbitrary, capricious, or unreasonable as to warrant action by this court.

Additionally, Gaston fails to point to a specific instance of arbitrariness or make a prima facie showing of "more than the mere possibility of misgrading" that would justify more extensive disclosure. Id. at 262. This is most evident in Gaston's failure to provide any evidence to indicate that Narcan should not have been administered in this situation. Instead, Gaston presents evidence depicting alternate scenarios where Narcan should have been used without showing why its use would have been erroneous here. The record demonstrates that Gaston had sufficient access to the original examination booklet to enable him to him to make a showing that the testing process was inherently corrupt, arbitrary, capricious, or unreasonable. He made no such showing. Rather, the

A-2092-22

record demonstrates the Commission's testing and procedures and grading were soundly administered based on substantial, reliable evidence.  Accordingly, we affirm the Commission's decisions.

To the extent we have not addressed any of Gaston's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2092-22